[No. B032222. Second Dist., Div. Three. July 29, 1988.]

JUSTIN JONES, a Minor, etc., et al., Plaintiffs and Appellants, v. RICHARD SIEVE et al., Defendants and Appellants.

COUNSEL

Dennis D. Olson for Plaintiffs and Appellants.

Mark G. Hyde, Rankin, O'Neal, Center, Luckhardt & Lund, Edward A. Hinshaw & Associates and Tyler G. Draa for Defendants and Appellants.

OPINION

**DANIELSON, Acting P. J.**—Richard Sieve, M.D. (Dr. Sieve) appeals from an order granting a new trial and an order denying a motion to reconsider the order granting a new trial, and for relief under Code of Civil Procedure section 473.[1] ██ Justin Jones (Justin) and Kimberly Jones (Justin's mother; collectively, plaintiffs) have cross-appealed[2] from the judgment and the order denying a motion for judgment notwithstanding the verdict.

PROCEDURAL AND FACTUAL STATEMENT

The first cause of action of the first amended complaint alleged that Justin, a minor, was born on December 30, 1981, and suffered permanent personal injuries, including blindness and brain damage, through the negligence of Dr. Sieve. In the second cause of action Justin's mother sought damages for personal injuries to herself arising from Dr. Sieve's alleged negligence in treating her. In the remaining cause of action Justin's mother sought damages based on her witnessing of Justin's birth and his personal injuries. Dr. Sieve answered the complaint on April 29, 1983, by denying its material allegations and by asserting five affirmative defenses.

During trial, the jury was instructed to return separate special verdicts regarding each plaintiff as to six specific issues. The first issue asked the jury to determine whether Dr. Sieve was negligent. The second asked the jury to determine whether such negligence was the legal cause of that plaintiff's injuries. The third through sixth issues involved damages.

On May 29, 1985, the jury returned the following special verdicts: The jury found Dr. Sieve negligent as to each plaintiff, but found such

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] We dismiss plaintiffs' purported cross-appeal from the order denying their motion for a new trial on the grounds of insufficiency of the evidence, irregularity of proceedings, and error in law. An order denying a new trial motion is nonappealable. (*Armenta* v. *Churchill* (1954) 42 Cal.2d 448, 451 [267 P.2d 303].)

negligence not to be the legal cause of plaintiffs' injuries. The issues concerning damages, which were thus moot, were not addressed by the jury. Judgment was then awarded to Dr. Sieve and against plaintiffs.

Plaintiffs were served with notice of entry of judgment by mail on June 21, 1984.

On July 8, 1985, plaintiffs filed a notice of intention to move for a new trial on the issues of legal cause and damages on the ground of jury misconduct, insufficiency of evidence, irregularity in proceedings, and legal error. On that date plaintiffs also filed a motion for judgment notwithstanding the verdict.

As evidentiary support, plaintiffs supplied the affidavit of Julie Shine, one of the twelve jurors (Juror Shine). Juror Shine described certain events of jury misconduct which occurred during jury deliberations.

In his written opposition, Dr. Sieve objected to the affidavit on the grounds it was argumentative, conclusory, vague, and inadmissible.

Following a hearing, the motions were submitted. On August 16, 1985, the court granted the motion for a new trial on the issues of legal cause and damages on the ground of jury misconduct only. The court expressly rejected the remaining grounds as meritless. The court summarily denied the motion for judgment notwithstanding the verdict.

On August 27, 1985, Dr. Sieve filed a motion under section 1008 for reconsideration of the order granting a new trial, for permission to file counterdeclarations of other jurors under section 473, and upon reconsideration to "re-enter" judgment for Dr. Sieve based on such new evidence.

Dr. Sieve's attorney stated in his declaration that he had failed to submit counter-declarations earlier, because he had believed Juror Shine's declaration to be inadmissible. As further evidentiary support, Dr. Sieve filed the declarations of five of the eleven remaining jurors.

In their opposition plaintiffs took the position, inter alia, that the court had lost jurisdiction to rule on the motion to reconsider the order granting a new trial.

On October 15, 1985, the court denied the motion on the ground of lack of jurisdiction. The court pointed out that the 60-day period for ruling on a motion for new trial expired on August 20, 1985, while the motion for reconsideration had not been filed until August 27, 1985.

### Appeal Contentions

Dr. Sieve initially claims the trial court abused its discretion in granting the motion for a new trial. He argues "the law requires, at a minimum, presentation of the actual statements constituting the misconduct which reveal, on their face, prejudice to the aggrieved party, no matter how weak that prejudice may be (other than the mere fact of the verdict itself), before the burden shifts to the prevailing party to rebut[ ] the evidence presented." He contends the affidavit of Juror Shine was deficient in that regard, because it "vaguely relate[d] impressions of or conclusions regarding events of misconduct without any showing whatsoever of prejudice to" plaintiffs. He also urges this court to independently review the record to determine whether prejudice actually exists. As authority, he cites *Hasson* v. *Ford Motor Co.* (1982) 32 Cal.3d 388 [185 Cal.Rptr. 654, 650 P.2d 1171]. He next asserts that the order granting a new trial is not supported by any of the other grounds specified by plaintiffs.

Alternatively, Dr. Sieve complains the trial court erred in denying his motion for reconsideration of its order granting motion for a new trial, and for relief under section 473, on the ground of lack of jurisdiction. He requests the matter be remanded with directions for the trial court to consider the motion on the merits.

### DISCUSSION ON APPEAL BY DR. SIEVE

#### I. *Order Granting New Trial*

"Upon appellate review of an order granting a new trial, 'all intendments are in favor of the action taken by the lower court [and] the affidavits in behalf of the prevailing party are deemed not only to establish the facts directly stated therein, but all facts reasonably inferred from those stated.' [Citation.]" (*Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 106 [95 Cal.Rptr. 516, 485 P.2d 1132].) Moreover, " 'it is well [established] that the granting of a motion for a new trial rests so completely within the discretion of the trial judge that an appellate court will not interfere with his action unless a manifest and unmistakable abuse of discretion clearly appears. [Citations.]' [Citation.]" (*Id.* at p. 109.)

From our review of the record we find no abuse of discretion regarding the granting of a new trial on the ground of jury misconduct. Based on Juror Shine's affidavit the court found two instances of jury misconduct from which a presumption of prejudice arose since they were

not of a trifling nature[3] but, instead, concerned the merits of the subject under deliberation by the jury. The first concerned Juror Villas who discussed and described to the jury her own personal experiences with the condition of preeclampsia, one of the basic subjects of the instant medical malpractice action. The second involved Juror Robinson who had consulted a reference for the definition of terms that were the subject of deliberation and then explained to the jury her understanding thereof based upon that outside reference.

On the issue of prejudice the court found plaintiffs failed to show any specific prejudice other than to point to the jury verdict; however, based on *Smith* v. *Covell* (1980) 100 Cal.App.3d 947 [161 Cal.Rptr. 377] the court concluded this omission was of no legal import inasmuch as the burden was on the prevailing party to show the misconduct to be harmless. The court then found Dr. Sieve had failed to carry this burden by producing the counterdeclaration of any juror to show the misconduct was harmless.

It is in this context that we address Dr. Sieve's first contention, i.e., the law requires "presentation of the actual statements constituting the misconduct which reveal, on their face, prejudice to the aggrieved party, . . . before the burden shifts to the prevailing party to rebut[ ] the evidence presented." We reject this recitation as a misstatement of the law.

■ Jury misconduct need not be established solely from the "actual statements" made. "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly." (Evid. Code, § 1150, subd. (a).) In other words, a verdict may be impeached by proof of any overt act, which is objectively ascertainable, i.e., "open to sight, hearing, and the other senses and thus subject to corroboration." (*People* v. *Hutchinson* (1969) 71 Cal.2d 342, 349, 350 [78 Cal.Rptr. 196, 455 P.2d 132].)

■ In the present instance it was the conduct of the jurors that was at issue, not the content of any statements made. (Cf. *Weathers* v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d 98, 110 (statements of two jurors evidenced prejudgment and actual bias); *Clemens* v. *Regents of University of California* (1971) 20 Cal.App.3d 356, 361-363 [97 Cal.Rptr. 589] (statements of a juror showed substantial bias and prejudice and prejudgment of

---

[3] The court expressly found to be insufficient to justify setting aside the verdict the misconduct of Juror Marth, who had expressed her opinion and intent to vote against plaintiffs before deliberation began in violation of the court's instruction to discuss the case before taking a position.

issues).) Exactly what was said by the jurors was not critical. The crucial facts of overt acts showing misconduct established by Juror Shine's affidavit were the fact that Juror Villas communicated to the other jurors her own experience concerning a pivotal issue and the fact Juror Robinson defined a relevant term by reference to an outside source in place of the evidence produced at trial. ■ "Jurors cannot, without violation of their oath, receive or communicate to fellow jurors information from sources outside the evidence in the case. [Citation.]" (*Smith* v. *Covell, supra,* 100 Cal.App.3d 947, 952.)

Next, we point out that Dr. Sieve misapprehends the standard concerning prejudice arising from jury misconduct and the import of the decision in *Hasson* v. *Ford Motor Co., supra,* 32 Cal.3d 388. The thrust of his position, apparently, is that statements constituting the misconduct must reveal "on their face" prejudice to the aggrieved party, i.e., actual bias or prejudgment on the part of the juror, before the burden to rebut such acts shifts to the prevailing party. That is not the test for prejudice.

■ In *People* v. *Honeycutt* (1977) 20 Cal.3d 150 [141 Cal.Rptr. 698, 570 P.2d 1050] our Supreme Court announced: "It is well settled that a presumption of prejudice arises from *any* juror misconduct. . . . However, the presumption may be rebutted by proof that no prejudice actually resulted." (*Id.* at p. 156; italics added.) Accordingly, there is no need for the misconduct to consist of statements or to show actual bias or prejudgment in order to invoke the presumption of prejudice. ■ Overt acts, such as the communication of facts obtained outside the evidence presented at trial to the other jurors which occurred here, constitute juror misconduct, and thus, give rise to the presumption of prejudice even though such acts do not necessarily reflect any bias or prejudgment on the part of the communicating juror. ■ Moreover, once acts of jury misconduct are established, the presumption of prejudice becomes conclusive unless rebutted by the prevailing party.

As explained by the court in *Hasson* v. *Ford Motor Co., supra,* 32 Cal.3d 388: "The presumption of prejudice is an evidentiary aid to those parties who are able to establish serious misconduct of a type likely to have had an effect on the verdict or which deprived the complaining party of thorough consideration of his case, yet who are unable to establish by a preponderance of the evidence that actual prejudice occurred." (*Id.* at p. 416.)

The *Hasson* court then announced that presumption "may be rebutted by an affirmative evidentiary showing that prejudice does not exist *or* by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm to the complaining party

resulting from the misconduct. [Citations; fn. omitted.] Some of the factors to be considered when determining whether the presumption is rebutted are the strength of the evidence that misconduct occurred, the nature and seriousness of the misconduct, and the probability that actual prejudice may have ensued." (*Id.* at p. 417, italics added.)

 In this regard Dr. Sieve argues that in the absence of counterdeclarations this court must, based on *Hasson,* conduct an independent review of the record and apply those factors to determine whether the presumption of prejudice was rebutted.

We find Dr. Sieve's reliance on *Hasson* to be misplaced. The *Hasson* court did not modify or overrule the pronouncement in *Honeycutt* that the presumption of prejudice may, and therefore must, be rebutted by *proof* that no prejudice actually resulted. (But see *Hasson v. Ford Motor Co., supra,* 32 Cal.3d 388, 416, at fn. 9.) Instead, the *Hasson* court's alternative independent review of the record method, to determine whether the presumption of prejudice was rebutted, is based on the principle that "[o]n review of an order *denying* a new trial an appellate court has the obligation to review 'the entire record, including the evidence, so as to make an independent determination whether the error was prejudicial.' [Citations.]" (*Hasson v. Ford Motor Co., supra,* 32 Cal.3d 388, 417, fn. 10; italics added.) As we pointed out, *ante,* this is not the standard of review on an appeal from an order *granting* a motion for a new trial, which is the case here.

We need not address Dr. Sieve's contentions regarding plaintiffs' alternative grounds for a new trial since the jury misconduct involved here is sufficient in itself to support the granting of a new trial. (§ 657, subd. 1.)

## II. *Order Denying Reconsideration*

 Dr. Sieve acknowledges, pursuant to section 660, that the court had the power to rule on a motion for new trial only until August 20, 1985, which is the 60th day after the mailing of the notice of entry of judgment. He further concedes that his motion for reconsideration under section 1008, and for relief under section 473, was filed on August 27, 1985, a date past that deadline. Nonetheless, he contends the limitation period of section 660 is not cast in concrete and should not bar his otherwise timely motion. As authority he cites *Clemens v. Regents of University of California* (1970) 8 Cal.App.3d 1 [87 Cal.Rptr. 108], *Krouse v. Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022], and *Pollock v. Standard Oil Co.* (1967) 256 Cal.App.2d 307 [64 Cal.Rptr. 66].

We reject his position. He misrelies on *Clemens* and *Krouse.* In *Clemens* and *Krouse* no issue was raised nor addressed concerning the timeliness of

the trial court's ruling on the motion for a new trial. Moreover, it is of no legal significance that the Court of Appeal in *Clemens,* and our Supreme Court in *Krouse* ordered the trial court to rehear the motion for a new trial in the respective cases, which would involve a time frame beyond that specified in section 660. ■ Our Supreme Court and the Courts of Appeal are expressly empowered to "direct a new trial or further proceedings to be had." (§ 43; cf. *Clemens* v. *Regents of University of California* (1971) 20 Cal.App.3d 356, 361-362 [97 Cal.Rptr. 589].) That power is not vested in the trial courts.

Dr. Sieve's reliance on *Pollock* is also misplaced. In that case the motion for relief under section 473 was filed and determined before the expiration of the 60-day limitation period. Moreover, the *Pollock* court expressly observed: "The jurisdictional time for determining a motion for new trial [§ 660] obviously is not extended by the general provision of section 473." (*Pollock* v. *Standard Oil Co., supra,* 256 Cal.App.2d 307, 311.)

We reject Dr. Sieve's attempt to extend the 60-day limitation period of section 660. ■ " 'The right to move for a new trial is statutory . . . . Strict construction is necessary in order that litigants may not lose their rights.' [Citation.] The purpose of strict time limits is, of course, to avoid undue delays in finalizing judgments." (*Maple* v. *Cincinnati, Inc.* (1985) 163 Cal.App.3d 387, 391 [209 Cal.Rptr. 451].)

■ The 60-day limitation period of section 660 is mandatory and jurisdictional. (*Siegal* v. *Superior Court* (1968) 68 Cal.2d 97, 101 [65 Cal.Rptr. 311, 436 P.2d 311].) In *Siegal* our Supreme Court held that "an order made after the 60-day period purporting to rule on a motion for new trial is in excess of the court's jurisdiction and void." (*Ibid.*) Moreover, since the rule concerns a jurisdictional limitation, the 60-day period cannot be enlarged as an exercise of judicial discretion under the guise of mistake, inadvertence, surprise, or excusable neglect under section 473 or by means of a nunc pro tunc order. (*Id.* at pp. 101-102; *Wenzoski* v. *Central Banking System Inc.* (1987) 43 Cal.3d 539, 542 [237 Cal.Rptr. 167, 736 P.2d 753]; cf. *Drinkhouse* v. *Van Ness* (1927) 202 Cal. 359, 369-370 [260 P. 869].)

■ Section 1008 is "a statutory method for challenging an appealable order in the court rendering the order." (*Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1012 [183 Cal.Rptr. 594].) A party "may, within ten (10) days after knowledge of the order and based upon an alleged different state of facts" move for reconsideration of that order. (§ 1008.) "If a party seeks reconsideration of a final order . . . it would be error to grant the motion in the absence of a showing of newly discovered evidence because a trial court has no jurisdiction to correct judicial error in

the making of a final order except as provided by statute. [Citation.]" (*Blue Mountain Development Co., supra,* at p. 1013.) An order granting a new trial is a final order in this regard since it is appealable. (§ 904.1, subd. (d); see *Blue Mountain Development Co.,* at p. 1013.) Although section 1008 requires the motion to be made within 10 days after knowledge of the order for which reconsideration is sought, section 1008 imposes no time constraint on the trial court to rule upon the motion for reconsideration.

We note that the statute which provides for a motion to reconsider (§ 1008) does not, itself, limit the time within which the court must make its new order after granting reconsideration. Therefore, if a trial court could reconsider a motion for new trial after the expiration of the 60-day limitation mandated by section 660, the purpose and effect of section 660 would be nullified and the power of the court to rule on a motion for a new trial would be extended indefinitely.

■ "Every statute must be construed with reference to the whole system of law of which it is a part, so that each part may be harmonized and have effect. [Citation.] The various parts of a statute must be harmonized by considering each section in the context of the statutory framework as a whole. [Citation.] This rule applies even if the statutes to be harmonized appear in different codes. [Citation.] Significance should be given to every part of an act, if possible, and construction making words surplusage should be avoided. [Citation.] Where a general statute standing alone would include the same matter and conflict with a special statute, the special act will be considered as an exception to the general, whether it was passed before or after the general enactment. [Citation.] [¶] In addition, we must assume the Legislature had in mind existing law when it passes a statute. [Citation.]" (*Yoffie* v. *Marin Hospital Dist.* (1987) 193 Cal.App.3d 743, 748 [238 Cal.Rptr. 502].)

■ Based on our review of sections 660 and 1008 and mindful of the above legal principles, we hold the power of a trial court to rule on a motion for a new trial is constrained by the jurisdictional 60-day limitation period of section 660, which is a specific statute, and cannot be extended or expanded by the procedural device of moving under section 1008, a general statute, for reconsideration of an order granting or denying a new trial motion, which necessarily involves a request to correct judicial error.

Instead, the onus is on the party seeking reconsideration under section 1008, of an order granting or denying a new trial, to do so within the 60-day jurisdictional time frame. We recognize that the requirement of making a motion to reconsider under section 1008 within that time constraint presents inherent procedural problems. For example, no motion for reconsider-

ation may be possible where the court does not rule on the motion for a new trial until the 60th day. Moreover, orders shortening time to hear a motion under section 1008 would be necessary when the motion could not be calendared for hearing in the normal course due to the 60-day time limitation. On the other hand, the aggrieved party is not without a remedy. Relief is available by means of appeal from an order granting a new trial (§ 904.1, subd. (d)) or on appeal from the judgment with regard to an order denying a motion for a new trial. (See §§ 904.1, subd. (a), 906.)

### DISCUSSION OF CROSS-APPEAL BY PLAINTIFFS JONES

#### A. *Cross-appeal From Order Denying Motion for Judgment Notwithstanding the Verdict*

Plaintiffs assert their motion for judgment notwithstanding the verdict should be granted because "[t]he overwhelming weight of the evidence" or "overwhelming preponderance of the evidence" established Dr. Sieve's negligence to be the legal cause of plaintiffs' injuries. We disagree.

In the present case the court summarily denied the plaintiffs' motion for judgment notwithstanding the verdict after having first granted plaintiffs' motion for a new trial on the ground of jury misconduct. Implicit in these rulings, when viewed in context, is the court's implied finding that the verdicts on the issues of legal cause and damages were tainted by the unrebutted presumption of prejudicial jury misconduct. ▪ Inherent in the right to a jury trial is the right to 12 impartial jurors. (*Smith* v. *Covell, supra,* 100 Cal.App.3d 947, 955.) That right was abrogated by the serious misconduct of Jurors Villas and Robinson, which corrupted the jury's duty to regard only that evidence presented at trial. The jury verdicts were therefore properly set aside for that reason. This being the case it would be meaningless to test the validity of the null verdicts by applying the usual substantial evidence standard for reviewing a motion for judgment notwithstanding the verdict (see, e.g., *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 877-878 [151 Cal.Rptr. 285, 587 P.2d 1098]). We uphold the denial of that motion on the ground that the unrebutted presumption of prejudicial jury misconduct vitiated the trial on the issues of legal cause and damages, and thus, there were no verdicts to be supported or contracted by the evidence. (See *Tramell* v. *McDonnell Douglas Corp.* (1984) 163 Cal.App.3d 157, 173-174 [209 Cal.Rptr. 427].)

#### B. *Cross-appeal From the Judgment*

Since we affirm the trial court's order granting a new trial we dismiss plaintiffs' protective cross-appeal from the original judgment.

## DECISION

The orders granting a new trial, denying the motion for judgment notwithstanding the verdict, and denying the motion for reconsideration are affirmed. The cross-appeal from the judgment and the purported appeal from the order denying the motion for new trial are dismissed. Plaintiffs are awarded their costs on appeal.

Arabian, J., and Croskey, J., concurred.